## ESTATE OF JAMES McGINN, DECEASED.

[No. 7,054; decided April 20, 1889.]

Jurors—Consideration of Rejected Evidence.—Jurors should banish from their minds all evidence ordered stricken out by the court in the course of the trial, all questions which the court ruled should not be answered, and all remarks of counsel in presenting or arguing such matters for the consideration of the court. (Court's Charges A, B.)

Jurors—Consideration of Testimony Stricken Out.—If proof of an essential fact is dependent upon testimony stricken out by the court, such essential fact must be considered by the jury as not proved. (Court's Charge B.)

Jurors—Consideration of Question When Evidence Stricken Out.— If proof of an essential fact in an issue submitted to a jury is rendered incomplete because of testimony struck out by the court, the jury must consider such fact as unproved, unless the defect of proof is supplied by other testimony. (Court's Charge B.)

Jurors—Weight of Testimony and Credibility of Witnesses.—Any Remark or Statement by the Court during the course of a trial by jury, which concerns the weight of testimony or the credibility of a witness, or any matter within the jury's province, should be utterly disregarded by the jury; a consideration of it in reaching their verdict would be error. (Court's Charge C.)

Special Verdict—Instruction as to Form.—Special Verdicts with blanks to be filled out by the jury, by way of answer to each issue. (Court's Charge D.)

Special Verdict—Instruction as to Manner.—Reaching and returning verdict by a jury; and duty as to required information touching evidence or law during the deliberations. (Court's Charges E, F.)

Will Contest—Verdict of Jury.—Whenever three-fourths of a jury on a will contest agree on an answer to an issue, it becomes the jury's verdict on that issue; and whenever three-fourths agree on a verdict, the jury must be conducted into court and the verdict rendered in writing by the foreman, whereupon, if more than one-fourth of the jurors disagree, upon polling, the jury must be sent out again, otherwise the verdict is complete. (Instruction 1. Court's Charges E, F.)

Evidence.—Direct Evidence Proves the Litigated Fact in a direct manner, without (the necessity of) inference or presumption. (Instruction 4.)

Evidence.—Indirect Evidence is Proof of a Fact other than the litigated fact, but which justifies an inference or presumption of the existence of the litigated fact. (Instruction 4.)

Evidence.—Indirect Evidence is of Two Kinds, namely, inference and presumption. (Instruction 4.)

Evidence.—A Presumption is a Deduction Made by the Law from proof of particular facts. (Instruction 4.)

Evidence.—An Inference is a Deduction Made by the Reason of the jury from proved facts; the law being silent as to the effect of such facts. (Instruction 4.)

Evidence—Conclusive Presumption.—A Jury must Find a Fact in accordance with a conclusive presumption of law announced by the court. (Instruction XXVIII.)

Evidence.—An Inference must be Founded upon a Fact Legally Proved, and upon such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature. (Instruction 4.)

Evidence—Weight and Reliability of Expert Testimony.—The testimony of experts (here medical witnesses) based upon hypothetical questions, is frequently unsatisfactory and often unreliable; and while accepted in law, and so requiring consideration, is not entitled to as much weight as are facts, especially in cases of conflict between opinion and fact. (Instruction XLV.) (*This instruction is hardly in accord with Estate of Blake, 136 Cal. 306, 70 Pac. 171, holding that it is the sole province of the jury to determine the credibility of experts and the weight to be given their testimony.*)

Evidence.—Experts and Opinion Evidence, Contrasted with Nonexperts and nonopinion evidence (facts), and discussion as to characteristic differences in the certainty or uncertainty of the various subjects themselves, embraced within the domain of expert evidence. (Instruction XLV.)

Evidence—Estimation According to Intrinsic Weight and Power to Produce.—Evidence is to be estimated not only by its own intrinsic weight, but also in view of the evidence which it is in the power of one side to produce, and of the other side to contradict. (Instruction 3.)

Evidence—Power to Produce.—Evidence Should be Viewed with Distrust when it appears that stronger and more satisfactory evidence was within the power of the parties to produce. (Instruction 3.)

Evidence.—Jurors are the Exclusive Judges of the Credibility of each and every witness. (Instruction 3.)

Evidence.—While Jurors are the Sole and Exclusive Judges of the value or effect of the evidence in a case, their power is not arbitrary, but subordinate to the rules of evidence and the exercise of legal discretion. (Instruction 2.)

Will Contest.—The Failure of a Party to a Will Contest to be a Witness in his own behalf does not authorize a jury to draw any inference therefrom. (Instruction XLVIII.)

Evidence—Failure of Party to Testify.—There is No Presumption or inference of law from the default of a party to be a witness in his own behalf. (Instruction XLVIII.)

Evidence—Failure of Party to Testify.—The Nonlegal Effect of the election of a party to an action or proceeding to refrain from exercising his right to be a witness in his own behalf only refers to the want of legal bearing upon the entire evidence in the case, as being thereby rendered weaker or stronger, or satisfactory or unsatisfactory; and has no application to the question of the quantum or totality of the evidence offered. (Instruction XLVIII.)

Evidence.—In Determining the Weight and Credibility of the Testimony of a party to a will contest, a jury may take into consideration his interest in the result of the verdict, and all the circumstances of the case and environment of the party. (Instruction XLVII.)

Evidence.—A Jury is not Bound to Decide in Conformity with the declarations of any number of witnesses which do not produce conviction, as against a smaller number, or as against a presumption from the evidence of the latter which satisfies the minds of the jury. (Instruction 3.)

Evidence.—A Witness is Presumed to Speak the Truth, but this presumption may be rebutted by the manner in which he testifies, or the character of his testimony, or evidence affecting his character for truth, honesty and integrity, or evidence in contradiction of it. (Instruction 3.)

Evidence.—If a Jury Believes that a Witness has Willfully Sworn Falsely upon a material matter, it may disregard his entire testimony except to the extent of its corroboration. (Instruction XLVI.)

Wills—Subscription and Attestation.—A Will not Olographic or Nuncupative in Character may be set aside, if it was not subscribed and attested as prescribed by the Civil Code, section 1276. (Issues 1 to 10, inclusive. Instructions VII, 6.)

Wills—Lack of Testamentary Capacity.—A Will may be Set Aside if the testator was not of sound and disposing mind at the time of the alleged execution thereof. (11th Issue. Instructions VIII, 31, 58.)

Wills—Undue Influence.—A Will may be Set Aside if made through undue influence exerted upon the testator by any beneficiary thereunder, touching the subscription or publication of the will, or the making of any disposition therein. (12th Issue. Instructions XVII, 5, 12.)

Wills—Misrepresentation to Testator.—A Will may be Set Aside if made through fraudulent misrepresentation exerted upon testator by any beneficiary thereunder, touching the subscribing or publishing of the will, or the making of any disposition or provision therein, or the disherison of any heir. (13th Issue. Instructions XXXVI, 5, 13, 14.)

Wills—Fraud Against Testator.—A Will may be Set Aside if made through fraud practiced upon testator by any beneficiary thereunder,

touching the subscribing or publishing of the will, or the making of any disposition therein. (14th Issue. Instructions XL, 5, 14.)

**Wills—Insane Delusion.**—A Will may be Set Aside if executed under a delusion or illusion, affecting the testator, as to any beneficiary or heir at law. (15th Issue. Instructions XLI, 40.)

**Wills—Revocation by Subsequent Will.**—A Will may be Set Aside if, subsequent to the execution thereof, the testator duly executed another will which in express terms revoked all former wills. (16th Issue. Instruction 7.)

**Wills—Revocation by Subsequent Will.**—A Will may be Set Aside if, subsequent to the execution thereof, the testator revokes it (as prescribed by Civil Code, section 1292). (17th Issue. Instruction 7.)

**Will Contest.**—The Decree Admitting a Will to Probate, in the First Instance, is not evidence as to any issue raised in a subsequent contest, or of any fact contained in any issue. (Instructions 61, 62.)

**Will Contest.**—The Respondent in a Will Contest must Establish by a preponderance of evidence the formal statutory execution of the propounded will, where the contestant has raised an issue as to the fact of execution. (Instruction 18.)

**Will Contest.**—The Contestants in a Will Contest have the Burden of Proof as to establishing the issues raised by them; and this burden must be sustained by a preponderance of evidence. (Instructions VI, 17, XXXVIII, XL.)

**Will Contest.**—The Preponderance of Evidence is Determined not by the number of witnesses, but by a consideration of the opportunities of the several witnesses as to the subject matter of their respective testimony, their manner while testifying, their interest or lack of interest in the case, and the probability or improbability of their testimony in view of all the other evidence or circumstances of the case. (Instruction XLIX.)

**Separate Property.**—All Property of a Married Man owned by him before marriage, and all property which he acquires during marriage by way of gift, bequest, devise or descent, together with the rents, issues and profits of all such property, is his separate estate. (Instruction I.)

**Separate Estate.**—All Property of a Married Woman owned by her before marriage, and all property which she acquires during marriage by way of gift, bequest, devise or descent, together with the rents, issues and profits of all such property, is her separate estate. (Instruction I.)

**Community Property.**—All Property Acquired During the Marriage by either husband or wife, which is not acquired by way of gift, bequest, devise or descent, or as the rents, issues or profits of property so acquired, or as the rents, issues or profits of property owned by such spouse at the time of marriage, is community property. (Instructions I, 60.)

**Community Property.—Upon the Death of a Married Man, the Community Property** devolves one-half to the surviving wife, and the other half as follows: First, subject to the husband's testamentary disposition; and, second, in the absence of such disposition by him, to his descendants, equally if in the same degree of kindred. (Instructions II, 60.)

**Community Property.—The Admission of a Will to Probate does not Affect the Surviving Wife's** statutory right to one-half of the community property. (Instruction 60.)

**Minors.—The Father is Entitled to the Custody, Services and Earnings** of his legitimate unmarried minor child, until its majority or marriage, provided he has not relinquished such right. (Instruction V.)

**Minors—Compensation for Services to Parent.—If** a child remain in the father's home after reaching majority, continuing in the same services rendered during minority, there is no presumption of a contract or obligation by the father to pay therefor; an express agreement must be proved to create a liability. (Instruction V.)

**Wills—Right of Owner to Dispose of Property.—The** law places property wholly under the owner's control, and subject to such final disposition as he chooses to make by will. (Instruction III.)

**Succession.—All Property of a Person,** which is not effectually disposed of by his will, devolves upon the persons who are prescribed by the law as his legal successors. (Instructions II, III, IV, 60.)

**Wills—Who may Make and What may be Disposed of.—Every** person over the age of eighteen years, if of sound mind, may by will dispose of all his estate, real and personal; provided that a married man, as to community property, has no power of testamentary disposition as to the one-half thereof specially devolving upon his surviving wife. (Instructions II, III, 60.)

**Wills—Manner of Execution.—Every** will, except a nuncupative will, must be in writing; and every will, other than olographic and nuncupative wills, must be executed and witnessed as provided in section 1276 of the Civil Code. (Issues 1 to 10, inclusive. Instruction 6.)

**Wills.—The Paramount Right of Testamentary Disposition is** regarded as one of the most sacred of rights, and as the most efficient means which a person has in protracted life or old age to command the attention due his infirmities. (Instruction XIV.)

**Wills.—The Paramount Right of Testamentary Disposition** gives the owner of property the right to elect and determine whether he will allow his estate to descend, upon his death, to the persons designated by the law as his successors, or whether he will prevent such descent, and make a disposition by will. (Instructions III, IV.)

**Wills.—The Paramount Right of Testamentary Disposition Given** by law is absolute; it is not subject to any power of prevention by

testator's children, or widow, excepting only as to the statutory rights of the widow, by survivorship, in the community property. (Instruction III.)

Wills.—A Parent may Elect Whether to Allow His Estate to Descend by the law to his children equally, or dispose of it by will to one or more of his children to the exclusion of the others. (Instruction IV.)

Wills.—Parents, as Well as All Other Testators, have the Absolute Right to judge who are the proper objects of their bounty; and children have no right, legal or equitable, in the parent's estate which can be asserted against a competent parent's free act. (Instruction III.)

Wills—Testamentary Capacity—Bodily Affliction.—The paramount right of testamentary disposition is not forfeited, nor subject to be defeated, because a person may have been stricken with apoplexy, or afflicted with hemiplegia or paralysis, or stutters or stammers in speech, or suffers from any bodily affliction. (Instruction XIV.)

Wills—Immoral or Unjust Testator.—The paramount right of testamentary disposition is not forfeited, nor subject to deprivation, because a person may be immoral or unjust. (Instruction XIV.)

Wills.—Intellectual Feebleness or Weakness of the Understanding, of whatever origin, is not of itself a disqualification of the testamentary right. (Instruction X.)

Will Contest.—Upon an Issue of Unsoundness of Mind in a will contest the jury must determine, and the real point is, whether the testator was or was not of sound and disposing mind at the precise time of the subscription and declaration of the instrument. (11th Issue. Instructions VIII, XIII, 31, 58.)

Wills.—Unsoundness of Mind Embraces Every Species of Mental incapacity, from raging mania to that debility and extreme feebleness of mind which verges upon and even degenerates into idiocy. (Instruction 46.)

Wills.—A Person is of Sound and Disposing Mind Who is in full possession of his mental faculties, free from delusion and capable of rationally thinking, acting and determining for himself. (Instruction 8.)

Wills.—A Person may be Said to be of Sound and Disposing Mind who is capable of fairly and rationally considering the character and extent of his property; the persons to whom he is bound by ties of blood, affinity or friendship, or who have claims upon him or may be dependent upon his bounty; and the persons to whom and the manner and proportions in which he wishes the property to go. (Instruction IX. And see XII, XVI, 8, 33, 34, 35, 36.)

Wills.—A Partial Failure of Mind and Memory, even to a considerable extent, from whatever cause arising, will not disqualify testator, if there remain sufficient mind and memory to enable him to com-

prehend what he is about, and ability to realize that he is disposing of his estate by will, and to whom disposing. (Instruction XI.)

Wills.—In Deciding as to Testamentary Capacity, It is the Soundness of Mind and not the state of bodily health that is to be considered. (Instruction XII.)

Wills.—A Person's Bodily Health may be in a State of Extreme Imbecility, and yet he may possess testamentary capacity; i. e., sufficient understanding to direct the disposition of his property. (Instruction XII. And see 33, 36.)

Wills.—Neither Old Age, Distress, nor Debility of Body Incapacitates to make a will, provided there remain possession of the mental faculties and understanding of the testamentary transaction. (Instruction XIII.)

Wills—Injustice of as Showing Want of Testamentary Capacity.— The prima facie character of a will as just or unjust, equitable or inequitable, is no test of testamentary capacity. (Instruction XV.)

Wills.—Weakness of Mind is not the Opposite of Soundness of Mind; weakness is the opposite of strength, and unsoundness the opposite of soundness. (Instruction 8. And see XLI.)

Wills.—A Weak Mind may be a Sound Mind, while a strong mind may be unsound. Illustration of men of contrasting grades of intellect. (Instructions 8, XLI.)

Wills.—Neither Weakness nor Strength of the Mind determines its testamentary capacity; it is the healthy condition and healthy action—the even balance—which we denominate soundness. (Instruction 8.)

Wills.—There may be Partial Insanity, or Monomania Insanity, as to one or more persons or subjects, coexistent with soundness otherwise. (Instruction 8.)

Wills.—In Cases of Partial Insanity or Monomania, the testamentary capacity is affected as to the subject matter of such unsoundness. (Instruction 8.)

Wills.—Monomania Consists in a Mental or Moral Perversion, or both, as to some particular subject or class of subjects, whilst otherwise the person seems to have no such morbid affection. (Instruction 9.)

Wills.—Monomania has Various Degrees; in many cases the person is entirely capable of transacting business out of the range of his peculiar infirmity, and as to such matters may be entirely sound; while as to matters within the range of his infirmity he may be quite unsound. (Instruction 9.)

Wills.—A Will Which is the Direct Offspring of Partial Insanity or monomania is invalid, notwithstanding the general capacity is unimpeached. (Instruction 9.)

Wills.—Unsoundness of Mind may be the Result of Disease, Drunkenness, or one of many other causes. (Instructions 10, 33, 36.)

Wills.—Drunkenness, to Result in Unsoundness of Mind, must overcome the judgment and unseat the reason, either temporarily—the litigated moment—or permanently. (Instructions 10, 33, 36.)

Wills.—There are Two Conditions of Drunkenness Which may result in mental unsoundness, viz.: Where a person is overcome by the delirium of intoxication, or where the use of intoxicants has been so extended and excessive as to permanently disable the mind; in either case the judgment must have been overcome and the reason unseated. (Instructions 10, 33, 36.)

Wills.—The Commitment of a Person to the State Asylum for the Insane, on the ground of insanity, makes the legal presumption of continued insanity conclusive, where no evidence is offered to show restoration to mental sanity. (Instruction XXVIII.)

Wills.—In Determining the Soundness of a Testator's Mind, it is the right and the duty of the jury to take into consideration the provisions of the will and the condition and nature of the estate disposed of; the condition, mental and physical, of the beneficiaries, their age, and whether dependent upon the testator's bounty; the relations between the testator and any excluded children, their age, condition and dependence upon his bounty, and their conduct toward him; and in connection with all other admitted evidence as to the testator's mental soundness. (Instructions XVI, 55.)

Wills—Discrimination Against Children.—It will not be Presumed that a parent was of unsound mind because he discriminated between his children in his testamentary disposition. (Instruction IV.)

Wills—Condition of Testator Before and After Execution.—The mental condition of the testator, before and after the alleged execution of a will, is only important to throw light upon and show the actual mental condition at the time of execution. (Instructions XIII, 58.)

Will Contest—Effect of Admitting to Probate.—Upon the contest of a will after probate, the decree in the first instance admitting the will does not create any presumption of law, nor is it evidence that the testator was mentally sound at the time of the execution. (Instructions 61, 62.)

Wills.—If Mental Unsoundness Existed at the Time of Execution of a probated will, no act or declaration of testator, subsequent to the execution, could validate the same as a will. (Instruction 58. And see XIII.)

Wills.—If Mental Unsoundness Existed at the Time of the Execution of a will, the jury should disregard all evidence of sanity existing at a subsequent date. (Instruction 58.)

Wills.—The Issue of Undue Influence is Entirely Distinct from that of unsoundness of mind; and the principles governing each are entirely different. (Instruction 12.)

**Wills—Undue Influence.—A Person of Sound Mind** may be the victim of undue influence; so, also, may a person of unsound mind. (Instruction 12.)

**Wills—Undue Influence, What Amounts to.**—To define or exactly describe that influence which in law amounts to undue influence is not possible; it can be done only in general and approximate terms. The decision must be reached, in each case, by applying the general principles on the subject to the special litigated facts and their surroundings. (Instruction 12.)

**Wills—Undue Influence, What is not.**—All influences are not unlawful. Persuasion, appeals to the affections, or ties of kindred, or sentiment of gratitude for past services, or pity for future destitution or the like, are legitimate, and may be fairly pressed on a testator. (Instruction XIX.)

**Wills.—Undue Influence Consists in:** The use, for the purpose of an unfair advantage, of a confidence reposed by another, or a real or apparent influence over him; or taking an unfair advantage of another's weakness of mind; or taking a grossly oppressive or unfair advantage of another's necessity or distress. (Instructions XVII, XXIX, 11.)

**Wills.—Undue Influence is not that Influence** which arises from gratitude, affection or esteem; but must be the control of another will over that of the testator's, whose faculties are so impaired that he has ceased to be a free agent, and submits and has succumbed to such control. (Instruction XVIII.)

**Wills—Undue Influence.—The Question for Determination** upon an issue of undue influence over a testator is whether at the time of the alleged execution of the will he was free to do as he pleased, or was so far under the influence of the beneficiaries charged, or any of them, that the will is not his will, but is the will of one or more of the beneficiaries. (Instruction 12.)

**Wills—Undue Influence.—Before a Will can be Set Aside** upon the ground of undue influence, the jury must believe and find that at the execution of the will the mind of the testator was so under the control and influence of the beneficiaries charged, or some or one of them, that testator could not, if he had wished, have made a will different from that executed. (Instruction XXXIV.)

**Wills—Undue Influence.—Before a Will can be Set Aside** upon the ground of undue influence, the jury must believe that the testator had not at the time of the execution of the will sufficient strength of mind to resist the influence of the beneficiaries, and each of them, charged as undue. (Instruction XXXIV.)

**Wills.—Proof of Undue Influence** must generally be gathered from the circumstances of the case; very seldom is a direct act of influence patent; persons intending to control another's actions, especially as to a will, do not proclaim the intent. (Instruction 12.)

**Wills—Undue Influence, Circumstances Showing.**—Among the circumstances from which proof must generally be gathered of undue influence exercised upon a testator are: Whether he had formerly intended a different testamentary disposition; whether he was surrounded by those having an object to accomplish to the exclusion of others; whether he was of such weak mind as to be subject to influence; whether the will is such as would probably be urged upon him by those surrounding him; whether the persons who surrounded him were benefited by the will to the exclusion of formerly intended beneficiaries. (Instruction 12.)

**Wills.—Undue Influence is not a Presumption,** but a conclusion from proven facts and circumstances. (Instructions XXXII, XXXIII.)

**Wills.—Undue Influence Should not be Found** upon mere suspicion. (Instruction XXXIII.)

**Wills.—Undue Influence cannot be Presumed;** and it lies upon the contestants of a will to prove it by a preponderance of evidence. (Instructions XXXI, XXXII, XXXIII.)

**Wills.—The Law will not Presume Undue Influence** from the mere fact of opportunity or a motive for its exercise; or because of the testator's mental or physical condition; or because his children, or any of them, were excluded from the will. (Instruction XXXIII.)

**Wills—Undue Influence.**—It is Only that Degree of Influence which deprives a testator of his free agency, and makes the will more the act of others than his own, which in law avoids it. (Instruction XVIII.)

**Wills.—Undue Influence must be Exerted upon the Very Act** contested; it must be a present influence acting upon the testator's mind at the time of alleged execution. (Instruction XVIII.)

**Wills.—To Exert an Undue Influence the Person** charged must be of sound mind. (Instructions XXIX, XXX. And see XXVIII.)

**Wills—Undue Influence Exercised by Lunatic.**—Where a beneficiary under a will who was charged with having exerted undue influence over the testator had been adjudged insane at a date before the execution of testator's will, and there had been no judicial restoration to sanity, the jury were instructed that such beneficiary must be deemed incompetent to have entered into any agreement or conspiracy with anybody. (Instructions XXX, XXVIII.)

**Wills.—Procuring a Will to be Made, Unless by Foul Means,** is nothing against its validity. (Instruction XVIII.)

**Wills—What is not Undue Influence.**—A will procured to be made by kindness, attention and importunate persuasion which delicate minds would shrink from, cannot on that ground alone be set aside. (Instruction XVIII.)

**Wills—What is not Undue Influence.**—Neither advice, argument nor persuasion vitiates a will which is executed freely and from con-

viction, notwithstanding the will might not have been made but for such advice and persuasion. (Instruction XVIII.)

Wills.—Influence Arising from Legitimate Family and Social relations must be allowed to produce its natural result, even in the making of last wills; such influence being a lawful one. (Instruction XX.)

Wills.—However Great may be the Influence Exerted by and through legitimate family and social relations, there is no taint of unlawfulness in it; and there can be no presumption of its actual unlawful exercise merely from the fact of its known existence and its manifest operation on the testator's mind as a reason for his testamentary dispositions. (Instruction XXI.)

Wills.—The Influences Arising from Legitimate Family and Social relations are naturally very unequal and naturally productive of inequalities in testamentary dispositions, and no will can be condemned because of their proved existence, and evidence in the will itself of their effect; for such influences are lawful in general, and the law cannot criticise and measure them so as to attribute to them their proper effect. (Instruction XXII.)

Wills—Undue Influence.—A Wife has the Right to advise and to exercise her influence to move and satisfy the testator's judgment. (Instruction XXVII.)

Wills—Undue Influence.—A Husband's Testamentary Disposition to a Wife cannot be denied effect because it was due to the influence she acquired over him by her good qualities and kind attention. (Instruction XXIII.)

Wills—Undue Influence.—If a Wife Urge upon Testator the propriety of leaving her his property, and excluding others, it does not constitute undue influence. (Instruction XXVI.)

Wills—Undue Influence.—If a Wife, by Her Virtues, has gained such ascendency over her husband and so riveted his affections that her good pleasures are law to him, such influence can never be ground for impeaching a will in her favor, even though it exclude the rest of the family. (Instruction XXIV.)

Wills—Undue Influence.—Children may Exert Influence to induce the parent to make a will. (Instruction XXVII.)

Wills—Undue Influence.—A Will cannot be Set Aside because it is the result of an undue fondness for one member of testator's family, or a causeless dislike for another. (Instruction XXV.)

Wills—Undue Influence.—While a Person of Unsound Mind may be the victim of undue influence, the question as to any influence, or the character of it, becomes immaterial if the jury finds mental unsoundness at the execution of the contested act—a probated will—there being an issue, also, as to soundness of mind. (Instruction 12.)

Wills—Undue Influence.—The Court Instructed the Jury that their verdict upon the issue of undue influence must be "No," if they be-

lieved from the evidence that the will was prepared upon and according to testator's instructions, and was read to and understood by him, and accorded with his wishes; that at such times and at execution of the will he possessed sufficient mental strength and control of his faculties to determine such matters; and that if he had wished he could have made other disposal of his estate. (Instruction XXXV.)

Fraud.—A Fraudulent Misrepresentation must Contain these elements: materiality; falsity; knowledge of its falsity by the party making it, or want of reason by him for belief and lack of belief in its truth; intent to deceive; accomplishment of intent; resultant act of party deceived contrary to what it otherwise would have been. (Instructions XXXVI, XXXVII, XXXVIII, 13.)

Wills.—A Fraudulent Misrepresentation Sufficient to Avoid a Will must have been made by a beneficiary, and have operated upon the testator, and so operated that the will would not have been made, or would have been different, except for misrepresentations. (Instructions 13, XXXVI, XXXVIII, XXXVII.)

Fraud.—The Materiality Essential to Characterize Misrepresentation as fraudulent in law is lacking if the transaction would have taken place without the representation. (Instruction XXXVII.)

Fraud.—The Character of Materiality Essential to a Fraudulent misrepresentation must exist notwithstanding that there were no other inducements than the misrepresentation charged to cause the party to act as he did. (Instruction XXXVII.)

Fraud.—Fraudulent Misrepresentations must be Proved as they are alleged; and only the acts alleged can be proved. (Instructions XXXIX, XXXVIII, 13.)

Will Contest.—Upon an Issue of Fraudulent Misrepresentations in the execution of a will, a jury cannot raise a presumption of falsity as to a representation by a beneficiary. (Instruction XXXVIII.)

Will Contest.—Upon an Issue of Fraudulent Misrepresentation in the execution of a will, the consideration of delusion or insanity is not involved. (Instruction 13.)

Will—Fraud in Procuring.—A Testator may be of Sound Mind, and yet the victim of fraudulent misrepresentation. (Instruction 13.)

Will Contest.—The Issue of Fraud in a Will Contest can be Established Only by proof of the commission of a fraud; the constituent facts, and of what the fraud consisted; the influence of the fraud upon the testator, and the execution of the will as its result, and that otherwise the will would have been different. (Instruction XL.)

Will Contest.—The Actual Fraud Sufficient to Set Aside a Will must involve the commission by a beneficiary or with his connivance of some one of the acts set forth in section 1572 of the Civil Code,

with intent to deceive the testator, or induce him to subscribe or publish the will, or make a provision therein. (Instructions XL, 14.)

Wills—Fraud in Procuring.—If a testator be circumvented by fraud, the testament is without legal force. (Instruction 14.)

Wills.—Circumvention of a Testator by Means of Fraud is to be considered in the same light as "constraint by force," and will have the same effect in setting aside the will. (Instruction 14.)

Wills—Fraud in Procuring.—Honest Intercession or Request is not prohibited; but it is otherwise as to those fraudulent and malicious means which secretly induce the making of testaments. (Instruction 14.)

Wills—Duress in Procuring Execution.—If a testator is compelled by violence, or urged by threats, to make a will (or part of it), it is ineffectual. (Instructions 14, 5.)

Fraud.—Fraud is Never Presumed, but must always be proved. (Instruction XL.)

Will Contest.—Proof Under the Issue of Fraud in a Will Contest must be confined to the particular fraud alleged. (Instruction XL.)

Wills.—Delusion of Mind is to an Extent Insanity. The main character of insanity, in a legal view, is the existence of a delusion. (Instructions XLI, 37, 38, 40, 41, 42.)

Wills.—A Sound Mind is One Wholly Free from delusion. (Instruction XLI.)

Wills.—It is not Strength of Mind, but Soundness of Mind, that is the test of freedom from delusion; a weak mind is sound if free from delusion. (Instruction XLI, and see X.)

Wills.—Delusion Rests upon No Evidence, but is based on mere surmise. (Instruction XLIII.)

Wills.—An insane delusion is the pertinacious belief in the existence of something nonexistent, and acting upon the belief. (Instructions 15, XLI.)

Wills.—Belief in Things Without Foundation in Fact, which no sane person would believe, is insane delusion. (Instructions 15, XLI, 38, 42.)

Wills—Insane Delusion.—Belief Based on Evidence, however slight, is not delusion. (Instruction XLII.)

Wills—Insane Delusion.—A Person Who Against All Evidence and probability believes and supposes facts to exist which have no existence, and who acts, though logically, on such assumption, is essentially mad or insane as to those matters; notwithstanding that as to other subjects he possesses reason, or acts or speaks like a sensible person. (Instruction 38.)

Wills—Insane Delusion.—A Person may as to Some Subjects, and even generally, possess sufficient mind, memory and sense; while as to

his children, or some of them, he may be unsound in mind. (Instructions 39, 40.)

**Wills.**—A Will can be Revoked or Altered in the manner and cases prescribed in section 1292 of the Civil Code. (Instruction 7.)

**Wills.**—Subscribing Witnesses to a Will are not Required to be informed or have any knowledge of the contents of the instrument. (Instruction L.)

**Wills—Testamentary Capacity.**—The Court Instructed the jury to return a verdict of unsoundness of mind, if they found that the testator had not sufficient mind and memory to enable him to remember, weigh and consider the relations, connections and obligations of family and blood, and the claims of his disinherited children, whether resulting from excessive indulgence in intoxicants, apoplexy, paralysis or other disease, any mental delusion as to any of the children, or their filial affection, or any other cause. (Instructions 33, 34, 35, 36.)

**Wills—Insane Delusion.**—The Court Instructed the Jury to return a verdict of unsoundness of mind, if they found that the testator labored under a delusion as to any of his disinherited children; and that such delusion caused or affected the dispositive clauses of the will; although the testator might have been mentally sane as to everybody else. (Instructions 37, 41.)

**Wills—Insane Delusion.**—The Court Instructed the Jury to return a verdict of unsoundness of mind, as the result of insane delusion, if they found that the testator believed that his disinherited children had no affection for him, and that there was no foundation therefor, and that he could not be permanently reasoned out of such belief. (Instruction 42.)

**Will Contest—Finding as to Fact of Execution.**—The court instructed the jury that upon an issue contesting the formal execution of a will, they must return the year, month and date of signing, if they found the fact of execution. (Instruction VII.)

This was a contest of a will after probate, instituted by two of the testator's six children by his first marriage. The will disposed of all the estate to his second wife and the five children of the second marriage. The contest was based upon every statutory ground against the validity of a propounded will, viz.: 1. The alleged will was never signed by testator; 2. Testator never declared it to any witness; 3. Testator never requested the action or subscription of any person as witness; 4. Testator was of unsound mind; 5. Testator was the victim of fraud; 6. Of fraudulent misrepresentation; 7. Of duress; 8. Of menace; and 9. Of undue influence.

Issues were raised as to each of these grounds by all the beneficiaries, and also, separately, by the executors.

The contest was had before a jury and occupied sixty-seven days of actual trial, beginning November 15, 1888, and ending April 20, 1889. There were seventeen special issues submitted to the jury. Each issue was answered against the contestants except the eleventh issue, the response to which declared the testator to have been of unsound mind. Upon the coming in of the jury's verdict, the court ordered the will set aside, and the previous probate annulled as to everybody, noncontestants as well as contestants. Afterward a motion for new trial was made, heard and denied, and an appeal taken to the supreme court. The judgment and order of Judge Coffey was affirmed on this appeal, sub nom. Clements v. McGinn, by opinion filed August 30, 1893 (33 Pac. 920).

In the meantime—since April, 1889—the instructions given to the jury by Judge Coffey, in this case, had been used and approved by other judges in various will contests throughout the state. The affirmance by the supreme court may be taken as an approval of the entire instructions because, while the appellants' instructions (proponents of the will) were not the subject of specific exception on the appeal, yet the refused instructions upon which the appeal was based necessitated an examination of all the instructions, as to which the supreme court said: "The instructions were voluminous, and presented to the jury the questions of law applicable to the case with great clearness." And the court further specially held that the instructions "given on behalf of contestants were proper." There is also a special discussion by the supreme court of the meaning of the legal phrases "sound mind" and "unsound mind," which renders of especial interest the elaborate instructions of Judge Coffey on this head. Two important rulings of Judge Coffey, apart from the instructions, were also sustained on the appeal, viz.: That where a will is set aside under a contest begun before the year after probate has elapsed, the will is absolutely annulled, and not merely set aside as to the contesting heirs. Also, that an objection to a witness on the ground of mental incompetency is a question of fact purely, and should be

determined with reference to the competency at the time of objection.

Instruction XLV should be read with Estate of Blake, 136 Cal. 306, 70 Pac. 171.

The special issues submitted to the jury and the instructions and special charge given by the court are here reported in toto.

The respondents' allowed instructions are designated by Roman numerals, the contestants' by Arabic notation, and the court's own special charge by letters.

James L. Crittenden, for contestants (Mary A. Clements and Emma Burns).

Smith & Murasky, for executors (Eugene McGinn and Joseph Byrne).

Reddy, Campbell and Metson, for beneficiaries under will (Johanna McGinn and others).

### INSTRUCTIONS OF THE COURT.

#### Allowed and Given on the Part of Respondents.

I. All property of the wife owned by her before marriage, and that acquired afterward by gift, bequest, devise or descent, with the rents, issues and profits thereof, is her separate property.

All property owned by the husband before marriage, and that acquired afterward by gift, bequest, devise or descent, with the rents, issues and profits thereof, is his separate property.

All other property acquired after marriage by either husband or wife, or both, is community property.

II. Upon the death of the husband, one-half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and, in the absence of such disposition, goes to his descendants equally, if such descendants are in the same degree of kindred to the decedent.

III. Every person over the age of eighteen years, of sound mind, may by last will dispose of all his estate, real and

personal; and such estate, not disposed of by will, is succeeded to, if it be community property, in the manner described in the instructions last above given—that is to say: Upon the death of the husband, one-half of the community property goes to the surviving wife; and, if there be no testamentary disposition by the husband of the other half, such half goes to his children, if there are any, in equal shares.

From this you will see that every person over the age of eighteen years, of sound mind, is given the right to elect and determine whether he will allow his estate to go to his descendants in equal shares, as provided by law, or whether he will prevent such descent and succession and dispose [of it] by will. Every person has the right, by his last will and testament, to bestow his property on whomsoever he pleases; and his children cannot prevent such disposition of his property, for they have no right, either legal or equitable, in such estate, which can be asserted against his disposition of it by will. The law of the land has placed every person's estate wholly under the control of the owner, subject to such final disposition of it as he may choose to make by his last will and testament, limited only by the statutory rights of his widow.

All parents have a right to judge as to who are the proper objects of their bounty; and if free from undue influence and insane delusions, and of sufficient mental capacity, may give their property to any person whomsoever.

IV. The law having conferred on every person over the age of eighteen years, and of sound mind, the right to elect and determine whether he will allow his estate to descend to his children in equal shares, or whether he will bestow his entire estate upon one or more of his children, to the exclusion of all others, it will not be presumed in law that he was insane, or of unsound mind, because he has exercised that right, and discriminated between his children in the disposition of his estate.

V. The father of a legitimate unmarried minor child is entitled to its custody, services and earnings, until the majority or marriage of the child, unless the parent relinquishes such earnings or services.

If any child remain in the domicile of the father after attaining its majority, and continue in the services in which it had been engaged prior to its majority, no contract or obligation on the part of the father will be presumed to pay for such services, unless an express agreement to that effect is proved.

VI. The burden is upon the contestants in this proceeding to prove and establish the issues made herein, by a preponderance of evidence, and, unless so established, you will find each and every issue against said contestants.

VII. As to the Tenth Issue, you are instructed to determine, from the evidence in the case, in what year and month, and on what date, the will in evidence was signed by said James McGinn, and set forth the month, year and day so determined upon, in your answer, if you should find that it was ever signed by said McGinn.

VIII. Upon the Eleventh Issue, the court instructs you that you should determine, from all the evidence in the case bearing upon the question, whether the said James McGinn was of sound and disposing mind at the time of signing the instrument offered in evidence, and purporting to be the last will and testament of said James McGinn, and if you find, from the evidence, that he was of sound and disposing mind at the time the said instrument was subscribed by him, and when the said James F. Tevlin and James F. Smith signed their names to the same, your answer to said Eleventh Issue should be "Yes."

IX. A person may be said to be of sound and disposing mind who is capable of fairly and rationally considering the character and extent of the property to be disposed of, the persons to whom he is bound by ties of blood, affinity or friendship, or who have claims upon him, or who may be dependent upon his bounty, the persons to whom, the manner and proportions in which, he wishes the property to go.

X. Intellectual feebleness alone, or mere weakness of the understanding—whether this condition of mind is brought about by natural causes, or the result of an injury or disease—does not disqualify a person from making a valid will.

XI. A partial failure of mind or memory, even to a considerable extent, whether it arises from an attack of apoplexy,

hemiplegia, or paralysis, or from any other cause, is not in itself sufficient ground for setting aside a will, if there still remain sufficient mind and memory to enable the testator to comprehend and understand what he is about, or what he is doing, and ability to understand that he is disposing of his estate by his will, and to whom he is disposing of it.

XII. In deciding upon the capacity of the testator to make his will, it is the soundness of mind, and not the particular state of bodily health, that is to be attended to. The latter may be in a state of extreme imbecility, and yet he may possess sufficient understanding to direct how his property shall be disposed of.

XIII. Neither old age, distress, nor debility of body, incapacitates to make a will, provided the testator has possession of his mental faculties and understands the business in which he is engaged. The real point in issue and for you to determine is, whether the testator was of sound or unsound mind at the precise date of the making and execution of the will in question. What his mental condition was before and after executing the will is only important as it throws light upon his mind, and shows its actual condition when the will was executed.

XIV. The law gives to every man of sound mind the right to dispose of his property by last will, and this is regarded as one of the most sacred rights and the most efficient means which he has, in protracted life or old age, to command the attention due to his infirmities, and a man cannot legally be deprived of this right and power because he may have been stricken with apoplexy, or afflicted with hemiplegia, or paralysis, or because he may stutter or stammer in speech. However that may be, a person cannot be deprived of it for any of the reasons stated, or because of any bodily affliction —whatever it may be. He may be moral or immoral, just or unjust—the right belongs to him, if he be of sound and disposing mind.

XV. It makes no difference whether the will appears to your mind to be just or unjust, equitable or inequitable; you are not for that reason to find that the testator was of unsound mind; for a man may be of sound mind and strong mind, and yet be exceedingly unjust.

XVI. In determining the question of the soundness of mind of the testator, James McGinn, the jury have the right and it is their duty to take into consideration the provisions of the will itself, and the condition and nature of the estate disposed of; the condition, mental and physical, of the beneficiaries under the will, their age, and whether otherwise independent, or dependent upon the bounty of the testator; the relations between the testator and any children excluded from any benefit under the will, their age, condition, and whether dependent or independent of his bounty in the matter of self-support, and their conduct toward him, in connection with all the other evidence that has been offered on the question as to whether the deceased was or was not of sound mind at the time of the execution of the will in evidence.

XVII. The Twelfth Issue is: Was the signing or subscribing, or publication or acknowledgment of said instrument, or any part thereof or therein, or any one or more of the dispositions of the property in said instrument contained, made under or procured by, or made by or under any undue influence exercised by Johanna McGinn, the surviving wife of said James McGinn, Ellen Frances McGinn, the daughter of said James McGinn, and Joseph McGinn, the son of said James McGinn, or by either of them.

Undue influence consists:

1. In the use by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority, for the purpose of obtaining an unfair advantage over him;

2. In taking an unfair advantage of another's weakness of mind; or

3. In taking a grossly unfair advantage of another's necessity or distress: Civ. Code, 1575.

XVIII. The undue influence must be present influence acting upon the mind of the testator at the time of making his will, and the exertion of the undue influence upon the very act must be proved.

Procuring a will to be made, unless by foul means, is nothing against its validity. A man has a right by fair argu-

ment to induce another to make a will, and even to make it in his own favor.

A will procured by honest means, by acts of kindness, attention, and by importunate persuasion which delicate minds would shrink from, would not be set aside on that ground alone.

It is only that degree of influence which deprives a testator of his free agency, and makes the will more the act of others than his own, which will avoid it.

Neither advice or argument nor persuasion would vitiate a will made freely and from conviction, though such will might not have been made but for such advice and persuasion.

Undue influence is not such as arises from the influence of gratitude, affection or esteem; but it must be the control of another will over that of the testator, whose faculties have been so impaired as to submit to that control, and that he has ceased to be a free agent, and has quite succumbed to the power of the controlling mind or will.

XIX. All influences are not unlawful. Persuasion appeals to the affections or ties of kindred, to a sentiment of gratitude for past services, or pity for future destitution or the like—these are all legitimate, and may be fairly pressed on a testator.

XX. Lawful influence, such as that arising from legitimate family and social relations, must be allowed to produce its natural result, even in influencing last wills.

XXI. However great the influence thus exerted may be, it has no taint of unlawfulness in it, and there can be no presumption of its actual unlawful exercise, merely from the fact that it is known to have existed, and that it has manifestly operated on the testator's mind as a reason for his testamentary disposition.

XXII. Such influences are naturally very unequal, and naturally productive of inequalities in testamentary dispositions; and as they are also lawful in general, and as the law cannot criticise and measure them so as to attribute to them their proper effect, no will can be condemned because the existence of such an influence is proved, and because the will contains in itself proof of its effect.

XXIII. A wife cannot be denied the place accorded to her in her husband's will, because it was due to the influence which she acquired over him by her good qualities and kind attention in his lifetime.

XXIV. If a wife, by her virtues, has gained such an ascendency over her husband, and so riveted his affections that her good pleasures are law to him, such influence can never be a reason for impeaching a will made in her favor, even if it exclude the residue of the family.

XXV. A will cannot be set aside because it is the result of an undue fondness for some member of the testator's family, or a causeless dislike for another.

XXVI. If a wife urged upon a testator the propriety of leaving her his property, and to exclude others, it does not constitute undue influence to vitiate the will.

XXVII. The wife has the right to advise and to exercise her influence to move and satisfy the judgment of the testator.

And a son and daughter may exert some influence to induce the father to make a will.

XVIII. The record of the commitment of Mrs. McGinn to the State Asylum for the Insane at Napa, California, on account of her insanity, has been admitted in evidence. As appears by the record, Mrs. Johanna McGinn was committed to said Insane Asylum long prior to the alleged execution of the will offered in evidence. There is no evidence to prove, or tending to prove, that Mrs. McGinn has been restored to mental sanity, and, under the circumstances, it is a conclusive presumption of law that she is, and has been ever since said order of commitment, insane, and it is your duty to find in accordance with said presumption—that is to say, that she has been, ever since said commitment, insane.

XXIX. To constitute undue influence there must be an intention on the part of the person exercising it to take an unfair advantage of another's weakness of mind, or to take a grossly unfair advantage of another's necessity or distress. In order that such an intention may exist in the mind of the person exerting influence, it must appear that such person was at the time of sound mind, and capable of forming such intention.

XXX. You are also instructed that by reason of the adjudged insanity above mentioned of Mrs. Johanna McGinn, she must be deemed incompetent to enter into any agreement or conspiracy with any person or persons whomsoever.

XXXI. Undue influence cannot be presumed, but must be proved in each case, and the burden of proving it by preponderance of evidence lies on the contestants in this case.

XXXII. Undue influence is not a presumption, but a conclusion from the facts and circumstances proved.

XXXIII. Undue influence is not to be presumed, nor should it be found upon mere suspicion, but upon facts proved to your satisfaction. The law will not presume, from the mere fact that there was an opportunity or a motive for the exercise of undue influence, nor is there any presumption of law, that undue influence was exerted, because of the mental or physical condition of the testator, or that his children, or any of them, were excluded from any benefit under his will.

XXXIV. Before this will can be set aside, you must believe and find from the evidence that at the time of the execution of the will the mind of James McGinn was .so under the control and influence of his wife, Johanna McGinn, his daughter, Nellie McGinn, and his son, Joseph S. McGinn, or some one of them, that he could not, if he had wished, have made a will different from this.

You must believe that he had not sufficient strength of mind to resist such influences exerted by them at the time of the execution of the will.

XXXV. If you believe from the evidence that James McGinn gave the instructions to his attorney for the preparation of the will, that it was prepared according to those instructions, that said will was read to him, that he heard it read, and knew its full contents, and understood its provisions, and that its provisions were in accordance with his wishes, and that at these times, and when the will was executed, he had sufficient strength of mind and control of his faculties to determine for himself that this will disposed of his property as he wished, and that he could if he had wished have made any other disposition of his estate, your answer to and verdict on the Twelfth Issue should be the word "No."

XXXVI. The Thirteenth Issue is: Was said James Mc-Ginn induced to sign said instrument, or to acknowledge, or publish, or declare the same to be his will, or to make any disposition of his property, or any provision therein contained, by the, or any, fraudulent misrepresentations or statements made to him, the said James McGinn, by Johanna McGinn, the surviving wife of said James McGinn, Ellen Frances McGinn, the daughter of said James McGinn, or Joseph S. McGinn, the son of said James McGinn, or either of them?

To constitute a fraudulent misrepresentation, it must be made with the intention of deceiving the person to whom it is made. The statement or misrepresentation must be false, and it must be known to the party making it to be so, or the party making it must have no reason for believing it to be true.

XXXVII. The fraudulent misrepresentation must be material, and it is not material if the transaction would have taken place without it.

A representation must be material, even though there were no other inducements to cause the party to act as he did. That is to say, the representations—if any were made in this case—must have been false; they must have been made with the intention of deceiving James McGinn; they must have had that effect, and they must have been such that the testator, James McGinn, would not have made the will in question without them, or would have made a different will if such alleged misrepresentations had not been made.

XXXVIII. You are not to presume that any false representations were made to the testator by Johanna McGinn, Ellen F. McGinn, Joseph S. McGinn, or any of them, and you should find that no such representations were made unless the contestants have proved by a preponderance of evidence:

1. That the representations were made;

2. What the representations were;

3. That they were false;

4. That the parties making them knew them to be false, or had no reason to believe them to be true, and did not believe them to be true;

5. That they were made with the intention of deceiving;

6. That they did deceive the testator, and cause him to act contrary to what he otherwise would have acted.

XXXIX. The representations, if any were made, must be such as are alleged in the petition filed by the contestants. No other representations than those set forth therein should be regarded by you.

If the representations which are alleged in the petition of contestants are not proved, no others can be.

XL. The Fourteenth Issue is: Was said James McGinn induced to sign said instrument, or to acknowledge, or publish, or to declare the same to be his will, or to make any disposition of his property therein contained, by the, or any, fraud practiced upon him, the said James McGinn, or committed by said Johanna McGinn, and Ellen Frances McGinn, and Joseph S. McGinn, or by any of them?

Actual fraud has been defined in our code, section 1572 of the Civil Code, as consisting in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestion as a fact of that which is not true, by one who does not believe it is true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believed it to be true;

3. The suppression of that which is true by one having knowledge of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

Fraud is never presumed; it must always be proved, and it can be established only by proving the facts constituting the fraud; and, in this case, you should find that no fraud was practiced upon the testator, James McGinn, by any of the parties named, unless the contestants have proved to your satisfaction, by a preponderance of evidence:

1. That a fraud was committed;

2. The facts constituting that fraud, and showing of what it consisted;

3. That it influenced the testator, James McGinn, and caused him to make the will in question, and that he would have made a different will but for the perpetration of such fraud.

The fraud must consist of the fraud alleged in contestants' petition; no other should be regarded by you.

XLI. The Fifteenth Issue is: Was the said James McGinn, at the time when the said instrument was signed by him, and by said James F. Tevlin, and James F. Smith, and prior and subsequent thereto, laboring under or affected with or by any delusion or illusion as to Mary Clements, Emma Burns, P. H. McGinn, James McGinn, John McGinn, or Thomas McGinn, or as to any of them, or as to the filial affection of them, or any of them, towards him?

As to insane delusions: A sound mind is one wholly free from delusions. Weak minds differ from strong minds only in the extent and power of their faculties; unless they betray symptoms of delusions, their soundness cannot be questioned.

It is not the strength of a mind which determines its freedom from delusion; it is its soundness.

Thus, it is often said that such and such a distinguished man has a sound mind; yet a man in the plainer walks of life, of faculties of less extent or power, may be equally sound. The latter is one of sound mind equally with the former if free from delusions. Delusion of mind is, to an extent, insanity. The main character of insanity, in a legal view, is said to be the existence of a delusion; that is, that a person should pertinaciously believe something to exist which does not exist, and that he should act upon that belief.

Belief of things which are entirely without foundation in fact, and of the existence of which the testator had no evidence, and which no sane person would believe, is insane delusion; that is, when a person believes things to exist only, or at least in that degree only, in his own imagination, and of the nonexistence of which neither argument nor proof can convince him—that person is of unsound mind.

XLII. Belief based on evidence, however slight, is not delusion. One person, from extreme caution, or from a naturally doubtful frame of mind, will require proof before acting, amounting perhaps to demonstration; while another,

·of different faculties, but of equally sound mind, will act upon very slight evidence.

XLIII. Delusion rests upon no evidence whatever; it is based on mere surmise.

XLIV. It is alleged in the contestants' petition, paragraph XIII, that said supposed or pretended will was made under the false and insane delusion that he, said James McGinn, had, during his lifetime, made provisions for and advances to these contestants, and to each of them, and that he had advanced to them, and to each of them, a just and equitable share of his property and estate.

This is the delusion, and the only delusion, alleged in contestants' petition; and, unless the contestants have proved to your satisfaction, by a preponderance of evidence, that said James McGinn labored under that particular delusion at the time of the execution of said will, your answer to and verdict on the Fifteenth Issue should be "No."

XLV. Medical witnesses have been examined in this contest, and, so far as their testimony is dependent upon hypothetical questions, the court instructs you that:

The testimony of experts is frequently unsatisfactory, and many times unreliable. It is unsatisfactory, because it cannot convey to our minds the precise reasons why the conclusions are reached; and it is unreliable, because it is frequently based upon speculations instead of facts. Experts in the exact sciences and in mechanics, who base their opinions upon the laws of nature and of the exact sciences, and their own experience with those laws, have tangible facts before them; but where the opinions are based upon speculation, where the subject of the inquiry, namely, the operation and condition of the human mind, is beyond the possibility of human knowledge, we should receive those opinions as at least uncertain. So, when we see a person perform such or such an act, we can form an opinion whether the act is .rational or irrational, whether it is consistent with the standard or average human intelligence and reasonableness; but when we advance to speculations upon what would or would not follow upon some supposed existence of mental conditions, we go beyond the scope of knowledge and tread upon the realm of imagination or conjecture.

You are instructed, therefore, that while we receive and you will take into consideration the opinion of experts, such opinions are not entitled to as much weight as facts, especially where there is a conflict between an opinion and a fact. When a fact is established, it is a fact and cannot be overcome; while an opinion is but an opinion, and it may be true and it may be untrue. Opinions of different experts are often diametrically opposed to each other, even when based upon the same supposed conditions.*

XLVI. If the jury believes from the evidence that any witness examined in this proceeding has willfully sworn falsely as to any matter or thing material to the issues in the case, then the jury are at liberty to disregard his entire testimony, excepting in so far as it may have been corroborated by other credible evidence or facts and circumstances proved on the trial.

XLVII. You are instructed that while our statute renders parties to a suit or proceeding of this character competent witnesses, and allows them to testify, still the jury are the judges of the credibility and weight of such testimony, and, in determining such weight or credibility, the fact that such witnesses are interested in the result of the suit may be taken into account by the jury, and they may give such testimony only such weight as they think it is entitled to under all the circumstances of the case, and in view of the interest of such witnesses.

The jury have the right to take into consideration the situation and interest in the result of your verdict and all the circumstances which surround such witnesses, and give to their testimony only such weight as in your judgment it is fairly entitled to.

XLVIII. The court instructs the jury as a matter of law that, while the statute of this state authorizes a party to a suit to go upon the stand and testify in his own favor, he is under no obligation to do so, and if he fails to do so, the jury have no right to infer, from this fact alone, anything for or against such party.

There is no presumption or inference of law that such witnesses were not called to testify because of a consciousness

---

*But see Estate of Blake, 136 Cal. 307, 70 Pac. 171.

that their knowledge, if disclosed, would make against their side of the case, and in favor of the contestants.

A party is not bound to become a witness in his own behalf in order to avoid unfavorable legal inferences against him.

The instruction heretofore given you by the court, and to which reference is now made, refers to the character of the evidence as weaker or stronger, or satisfactory or unsatisfactory, and does not apply to the amount or sum total of the evidence offered.

XLIX. The jury are instructed that the preponderance of evidence in a case is not alone determined by the number of witnesses testifying to a particular fact, or state of facts. In determining upon which side the preponderance of evidence is, the jury should take into consideration the opportunities of the several witnesses for seeing or knowing the things about which they testified, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements in view of all the other evidence adduced or circumstances proved on the trial, and from all the circumstances determine upon which side is the weight or preponderance of the evidence.

L. The court instructs you that it is not at all necessary to the validity or due execution and publication of a will, that the subscribing witnesses, or any of them, should be informed of or have any knowledge whatever of the contents of the document purporting to be the last will of the testator. It is sufficient, so far as the execution of the will is concerned, if the testator signs in their presence, and declares the instrument to be his last will and testament, and they subscribe their names thereto, in his presence, at his request.

*Allowed and Given on the Part of Contestants.*

1. Whenever nine of your number agree on an answer to an issue, it becomes your verdict on that issue. Your verdict must be in writing, signed by your foreman, and nine of you must agree on that verdict.

2. You are the sole and exclusive judges of the value or effect of the evidence. Your power of judging of the effect

of the evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence.

3. You are not bound to decide in conformity with the declarations of any number of witnesses which do not produce a conviction in your minds against a less number, or even against a presumption from their evidence satisfying your minds. Evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other side to contradict; therefore, if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust. A witness is presumed to speak the truth, but this presumption may be repelled by the manner in which he testified or by the character of his testimony, or by evidence affecting his character for truth, honesty and integrity, or by contradictory evidence; and you, the jury, are the exclusive judges of the credibility of each and every witness, and as to every part of the testimony and evidence of each and every witness.

4. Direct evidence is that which proves the fact in dispute directly, without an inference or presumption. Indirect evidence is that which tends to establish the fact in dispute by proving another fact, and which, though true, does not itself conclusively establish that fact, but which affords an inference or presumption of the existence of that fact. Indirect evidence is of two kinds, inference and presumption. Inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect. A presumption is a deduction which the law expressly directs to be made from particular facts. The inference must be founded on a fact legally proved, and on such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature: Code Civ. Proc., 1958-1960.

5. A will or a part of a will, procured to be made by duress, menace, fraud or undue influence, is invalid.

6. Every will, other than a nuncupative will, must be in writing, and every will, other than an olographic will and a nuncupative will, must be executed and attested as follows: Civ. Code, sec. 1276:

First. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto.

Second. The subscription must be made in the presence of the attesting witnesses, or acknowledged by the testator to them to have been made by him or by his authority.

Third. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

Fourth. There must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request and in his presence.

7. A will can be revoked or altered: 1. By a written will, or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator; or 2. By being burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction: Civ. Code, sec. 1292.

8. A person is of sound and disposing mind who is in full possession of his mental faculties, free from delusion and capable of rationally thinking, acting and determining for himself. Weakness of mind is not the opposite of soundness, but is the opposite of strength of mind, and unsoundness is the opposite of soundness. A weak mind may be a sound mind, and a strong mind may be unsound. The strong mind of a man possessed of superior talents and of a determined will may be so wrought upon or affected by some delusion as to be unsound; and a weak mind—that is, a mind of what we call a lower grade of intellect—may be so evenly balanced as to be sound. It is not the weakness or strength of mind which determines its testamentary capacity; it is its soundness; that is, its healthy condition and healthy action. It frequently occurs that there is partial insanity, or monomania—insanity as to one or more persons, or upon

one or more subjects, and soundness as to all others; and in such cases the testamentary capacity is affected as to a person or subject in regard to which the unsoundness exists.

9. Monomania consists in a mental or moral perversion, or both, in regard to some particular subject, or class of subjects, while in regard to others the person seems to have no such morbid affection. The degrees of monomania are various. In many cases the person is entirely capable of transacting any matters of business out of the range of his peculiar infirmity; and, as to those matters out of that range, he may be entirely sound; while, as to matters within the range of the infirmity, he may be quite unsound: 1 Redfield on Wills, 72 et seq.

Whenever it appears that a will is the direct offspring of partial insanity, or monomania, it should be regarded as invalid, though the general capacity be unimpeached.

10. Unsoundness of mind may be the result of disease, drunkenness, or of one of many other causes. In case of drunkenness there are two conditions, a will made under either of which is invalid, viz.: Where the will is made during the period while the person is overcome by the delirium of intoxication, or where the use of intoxicating drinks has been so extensive and so excessive as to permanently disable the mind. But, in either case, the effect must be to have either temporarily or permanently overcome the judgment and unseated the reason.

11. Undue influence consists in the use, by one in whom a confidence is reposed by another who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him, or in taking an unfair advantage of another's weakness of mind, or in taking a grossly oppressive or unfair advantage of another's necessities or distress: Civ. Code, sec. 1575.

12. The issue of undue influence and the principles governing it are entirely different from the principles applicable to unsoundness of mind. Undue influence is entirely distinct from unsoundness. A person may be of sound and disposing mind and yet be the victim of undue influence, and he may also be a victim of such undue influence when of unsound mind. If James McGinn was of unsound mind on

September 26, 1887, when said instrument was signed and published by him—if it was ever signed and published by him—it is entirely immaterial whether or not any person exercised any undue influence over him in the matter of the making and execution of said instrument, because unsoundness of mind, of itself, incapacitates from making a will, influence or no influence. The question to determine here is, whether at the time of executing this alleged will—if it was ever executed—James McGinn was free to do as he pleased, or whether he was then so far under the influence of Johanna McGinn, Nellie Frances McGinn and Joseph McGinn, or any or either of them, that the will is not his will, but the will of said persons, or of one or more of them. Of course, persons who intend to control another's actions, especially in regard to making a will, do not proclaim that intent. Very seldom does it occur that a direct act of influence is patent; the existence of the influence must generally be gathered from circumstances. Such as, whether he had formerly intended a different disposition of his property; whether he was surrounded by those who had an object to accomplish, to the exclusion of others; whether he was of such weak mind as to be subject to influence; whether the paper offered is such a paper as would probably be urged upon him by the persons surrounding him; whether they were benefited thereby to the exclusion of formerly intended beneficiaries. The question for you to determine is, Was James McGinn, from infirmity of age, or from disease or other cause, constrained to act against his will, and to do that which he was unable to refuse by importunity or threats, or by any other means, or in any other way, by which one person acquires and exercises dominion and control over another? It is not possible to define or describe with exactness what influence amounts to undue influence in the sense of the law; this can only be done in general and approximate terms. In each case the decision must be arrived at by application of these general principles to the special facts and surroundings of the case.

13. In order that the will should have been executed under fraudulent misrepresentations, it is not necessary to consider the question of delusion or insanity. A person may be of

perfectly sound mind, and yet be influenced by fraudulent misrepresentations. You will, therefore, inquire whether the will contains any provision which was the product of such fraudulent misrepresentations as are alleged in contestants' petition, which were made to the testator, or by any or either or all of the persons named, to wit: Johanna McGinn, Nellie Frances McGinn and Joseph McGinn, for the purpose of inducing him, and which did induce him, to disinherit any one. You will inquire whether James McGinn was induced to sign, or to acknowledge, or to publish, the document propounded to be his will, or to make any of the dispositions of his property, or any of the propositions therein contained, by or under fraudulent misrepresentations made by Johanna McGinn, Nellie Frances McGinn and Joseph McGinn, or by either or any of them, or by any statements made to him by them, that certain things existed which did not in truth exist, and which caused him to make a will different from what he would otherwise have made.

14. Circumvention by means of fraud will be considered in the same light as constraint by force, and will have the same effect in setting aside a will as such constraint has.

If the testator be compelled by violence or urged by threatenings to make his testament, the testament, being made by fear, is ineffectual.

Likewise, if he be circumvented by fraud, the testament loses its force; for, although honest intercession or request is not prohibited, yet those fraudulent and malicious means, whereby men are secretly induced to make their testaments, are no less detestable than open force.

Actual fraud has been defined in our code (Civil Code, section 1572) as consisting in any of the following acts committed by a party to a contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestions of that which is not true by one who does not believe it is true;

2. The positive assertion, in a manner not warranted by information of the person making it, of that which is not true, though he believes it to be true;

3. The suppression of that which is true by one having knowledge of the fact;

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.

15. An insane delusion is the pertinacious belief of the existence of something which does not exist, and the acting upon that belief. Belief of things which are entirely without foundation in fact, and which no sane person would believe, is insane delusion. If a person be under a delusion, though there be but partial insanity, yet, if it be in relation to the act in question, it will defeat a will which is the direct offspring of that partial insanity.

17. In arriving at your verdict, you are to determine the different questions of fact, and each of the issues submitted to you, in accordance with the preponderance of evidence.

18. If you believe and are satisfied, by and from the evidence, that the respondents have not established and proved, by a preponderance of evidence, that the said instrument, claimed to be the last will and testament of James McGinn, deceased, was subscribed at the end thereof by said James McGinn, himself, or by some person in his presence, by his direction, then you will find as your answer to the First Issue, ''No.''

31. If you believe and are satisfied, from and by the evidence, that said James McGinn, deceased, was not of sound mind at the time the said instrument was subscribed by him, and when said James F. Smith and J. F. Tevlin signed their names to the same, then you will find, as your answer to and your verdict upon Special Issue No. 11, the word ''No.''

33. If you believe and are satisfied, from and by the evidence, that the mind and memory of said James McGinn had become so weakened and impaired, or deranged, from excessive indulgence in intoxicating liquors, or from any other cause, that he did not have or possess a sound and disposing mind and memory sufficient, or such a mind and memory as would enable him to recollect, discern and tell the relations, connection and obligations of family and blood, then it will be your duty to find, as your answer to and verdict upon Special Issue No. 11, the word ''No.''

34. If you believe and are satisfied, from and by the evidence, that the said James McGinn, at the time when said instrument was signed and attested, was laboring or suffering under any mental delusion in relation to his children, or in relation to their affection, or want of affection for him, and that such delusion incapacitated him mentally from considering and weighing the relations and claims of his children upon him, then it will be your duty to find, as your answer to and verdict upon Special Issue No. 11, the word "No."

35. If you believe and are satisfied, from and by the evidence, that said James McGinn, at the time when said instrument was signed by him and attested by James F. Smith and J. F. Tevlin, was laboring under or suffering from any mental delusion as to his daughters, Mary A. Clements and Emma Burns, or as to either of them, and that such delusion so far affected his mind toward his said daughters, or either of them, as to make him mentally incapable of duly weighing and considering their claims upon him as his children, or the claims of either of them upon him as his child, then it is your duty to find, as your answer to and verdict upon Special Issue No. 11, the word "No."

36. If you believe and are satisfied, from and by the evidence, that said James McGinn, at the time when said instrument was signed and attested, had become and was by reason of excessive indulgence in intoxicating liquors, or by or through apoplexy, paralysis, or other diseases, idiotic or imbecile, to such a degree as to render him incapable of remembering and weighing the relations, connections and obligations of family and blood, and the claims of his children upon him, then it will be your duty to find, as your answer and verdict upon Special Issue No. 11, the word "No."

37. If you believe and are satisfied, from and by the evidence, that the deceased, James McGinn, at the time when said instrument was signed and attested, was laboring under or suffering from a delusion in respect to his children, or in respect to any of his children who might have been the objects of his testamentary bounty, and that the disposing provisions of said instrument were caused or affected by such delusion, then you will find, as your answer to and verdict upon Special Issue No. 11, the word "No."

38. If you believe and are satisfied, from and by the evidence, that said James McGinn, deceased, believed and supposed facts to exist which had no real existence, and against all evidence and probability, and conducted himself, however logically, upon the assumption of their existence, then he was, so far as such matters are concerned, under a morbid delusion, a delusion in the sense of insanity, and was a person essentially mad or insane on those subjects, though on other subjects he might have had reason, or have acted or spoken like a sensible man.

39. A person may have upon some subjects, and even generally, mind, memory and sense sufficient to know and comprehend ordinary transactions and sufficient to enable him to attend to business, and yet upon the subject of his children, or upon the subject of some of his children, who would naturally be the objects of his care and bounty, he might be of unsound mind.

40. If you believe and are satisfied, from and by the evidence, that the deceased James McGinn, was, at the time when said instrument was signed and attested, laboring under a delusion in respect to his daughters, Mary A. Clements and Emma Burns, or either of them, and that this delusion influenced the making of said instrument, as to them, or either of them, then the instrument proposed is not the expression of the will of a testator of sound and disposing mind, and cannot be regarded as the will of James McGinn, and you will find, in answer to Special Issue No. 11, the word "No."

41. If you believe and are satisfied, from and by the evidence, that James McGinn was, at the time when said instrument was signed and attested, laboring under the delusions alleged in contestants' petition, with respect to his children, or any of them, then he. cannot be regarded as, or accounted as, mentally sane in making said alleged will, so far as his said children or any of them are concerned, though he might be mentally sane as to the rest of the world.

42. If you believe and are satisfied, from the evidence, that said James McGinn, at the time of signing and attestation of said instrument, had conceived or believed that his daughters, Mary A. Clements and Emma Burns, or either of them, had no affection for him, and that there was no

foundation for any such belief, and that he was incapable of being permanently reasoned out of that belief, then you will be warranted in concluding that said James McGinn was laboring under an insane delusion, and it will be your duty to find, as your answer to and verdict upon Special Issue No. 11, the word "No."

46. Unsoundness of mind, in the sense of Special Issue No. 11, embraces every species of mental incapacity, from raging mania to that debility and extreme feebleness of mind which approaches near to and even degenerates into idiocy.

55. In determining whether or not said James McGinn was of sound or unsound mind at the time of the making, signing and attestation of said instrument, you can take into consideration the disposition of property and the provisions made and contained in said instrument, as well as the manner in which the same is written and signed.

58. If you believe and are satisfied, from and by the evidence, that James McGinn was of unsound mind at the time of making, signing and attestation of said instrument, then no subsequent act or declaration of his could make said instrument valid as a will, and if you so believe, [then] any and all evidence of the soundness of mind of James McGinn, at a period subsequent to the making of said will, will be disregarded by you in finding your verdict upon Special Issue No. 11.

60. If you believe and are satisfied, from and by the evidence, that all the property of James McGinn was acquired after his second marriage, then said property is community property, and Johanna McGinn is entitled as his surviving wife to one-half of said property, and can claim the same though the said instrument is admitted to probate.

61. In deciding the issues raised by the pleading in this contest and submitted to you, you are instructed that the decree which admitted the alleged will to probate is not evidence as to any of the said issues, or as to any of the facts contained in said issues.

62. The decree of this court admitting said alleged will to probate, which has been admitted in evidence, does not raise or create any presumption of law that James McGinn was of sound and disposing mind or competent to make a will

at the time when said alleged will was executed, if the same was ever executed by him.

The court, then, of its own motion, further charged the jury as follows:

A. On one point in this connection it may perhaps be advisable for the court to caution the jury. It frequently happens that, in the course of a trial before a jury, counsel desire under their theory of the case to introduce evidence which, according to their antagonists, may seem improper, and it becomes the province of the judge to decide touching the admissibility of such evidence. In arguing and presenting a question, it often becomes necessary for counsel to state what is sought to be proved, or to ask some question of the witness which will disclose the fact or line of testimony, sometimes even the answer of the witness improvidently made aiding in the matter.

If the answer has not been made and objection has been sustained with or without exception saved, it is the duty of the jurors to banish from their minds, in considering their verdict, any suggestion of a fact or line of testimony introduced by such question to witness or offer of proof.

B. It frequently happens, however, that while the question is in itself unobjectionable, yet the witness in his answer fails to be responsive to the question, and either states matters which are inadmissible as evidence or irrelevant to the issue, or are for any other cause objectionable. A motion is thereupon made by the aggrieved party to strike out such answer or answers.

Such motion granted is notice to the jury that they are not to consider that particular testimony as offered, and if any essential fact depends for its proof upon such testimony so stricken out, and such proof is not supplied in some other way free from objection, such material fact is to be considered by the jury as not proved. Inasmuch, as before stated, the power of juries and judges as to the effect to be given to evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence.

C. It sometimes occurs that the judge, in the course of passing upon the admissibility of particular evidence or some

particular question, either misapprehends or misstates the fact sought to be proved, or expresses a doubt either as to the competency, the effect, or weight to be given to the evidence in discussion.

Any such statement by the court affecting the weight of testimony, the credibility of a witness, or any matter whatever, within the province of the jury, would, if adopted by the jury, or permitted in any manner to bias their minds in reaching a verdict, be error. It is therefore the duty of the court to charge the jury to utterly disregard and banish from their minds any chance expression of the judge before finally determining any question of admissibility which may concern either the weight of the testimony or the credibility or the want of credibility of any witness or statement made. and which may incautiously or unadvisedly have crept into the trial, and you are so cautioned.

D. I believe, gentlemen of the jury, that these instructions cover all the propositions of law upon which it is necessary for me to give you instructions. You may take with you the form of special verdict, in which blanks have been left for your foreman to attach the result of the jury's deliberations. In this form you will answer in the appropriate blanks, yes or no, to each issue, as you may determine it. If you desire, you can take with you the instrument here in dispute.

E. You may decide in court without retiring, or you may retire for deliberation.

If you retire, you must be kept together in some convenient place, under charge of an officer, until at least three-fourths of your number may agree on a verdict. Whenever nine of your number agree on an answer to an issue, it becomes your verdict on that issue.

If, after you retire, there be any disagreement between you as to any part of the testimony, or if you desire to be informed on any point of law arising in the case, you may require the officer to conduct you into court, and, upon your being brought into court, the information required must be given you in the presence of, after notice to, the parties or counsel.

F.   Whenever three-fourths of you have agreed on a verdict, you must be conducted into court, your names called by the clerk, and the verdict rendered by your foreman.

Your verdict must be in writing, signed by your foreman, and must be read by the clerk to the jury, and the inquiry made whether it is your verdict.   Either party may require the jury to be polled, which is done by the court or clerk, asking each juror if it is his verdict; and if, upon such inquiry or polling, more than one-fourth the jurors disagree thereto, the jury must be sent out again; but if no such disagreement is expressed, the verdict is complete, and you will be discharged from the case.

The case is now with you.

### THE SPECIAL ISSUES SUBMITTED.

The court then submitted the following special issues to the jury for their special verdict and answer to each of said issues, to wit:

First Issue.   Was the instrument in evidence in this case, and dated September 26, 1887, purporting to be the last will and testament of James McGinn, deceased, subscribed at the end thereof by said James McGinn?

Second Issue.   Was said instrument subscribed at the end thereof by said James McGinn, in the presence of James Tevlin and James F. Smith, as attesting witnesses thereto?

Third Issue.   If said instrument was ever subscribed at the end thereof by said James McGinn, deceased, did said James McGinn acknowledge to said James F. Tevlin and said James F. Smith that said instrument had been made and subscribed by him?

Fourth Issue.   Did said James McGinn, at the time of subscribing said instrument at the end thereof, in the presence of attesting witnesses, declare to said James F. Tevlin and said James F. Smith as attesting witnesses to said instrument, that the said instrument was his will?

Fifth Issue.   Was James F. Tevlin requested by said James McGinn to sign his name as witness to said instrument as the last will of said James McGinn?

Sixth Issue. Was James F. Smith requested by said James McGinn to sign his name as a witness to said instrument as the last will of said James McGinn?

Seventh Issue. Did James F. Tevlin and James F. Smith each sign his name to said instrument at the end thereof as a witness to the same as a will of said James McGinn, and so sign as a witness at said James McGinn's request, and in the presence of said James McGinn?

Eighth Issue. Was said instrument witnessed as a will of said James McGinn by two competent witnesses, each signing his name as a witness thereto at the end thereof, in the presence of said James McGinn, and at the said James McGinn's request?

Ninth Issue. If the said instrument was signed by the said James McGinn, did he publish and declare the same to James F. Tevlin and James F. Smith, and to each of them, and in the presence and hearing of both of them, to be his last will and testament?

Tenth Issue. If you shall find that said instrument was ever signed by said James McGinn, in what year and month, and on what date was the same so signed by him?

Eleventh Issue. Was the said James McGinn of sound mind at the time the said instrument was subscribed by him, and when the said James F. Tevlin and said James F. Smith signed their names to the same?

Twelfth Issue. Was the signing or subscribing, or publication or acknowledgment of said instrument, or any part thereof or therein, or any one or more of the dispositions of property in said instrument contained, made under or procured by, or made by or under any undue influence exerted by Johanna McGinn, the surviving wife of said James McGinn, and Ellen Frances McGinn, the daughter of said James McGinn, and Joseph S. McGinn, son of James McGinn, or by either of them?

Thirteenth Issue. Was said James McGinn induced to sign said instrument, or to acknowledge or publish or declare the same to be his will, or to make any disposition of his property, or any provisions therein contained, by the, or any, fraudulent misrepresentations or statements made to him,

said James McGinn, by Johanna McGinn, the surviving wife of said James McGinn, and Ellen Frances McGinn, the daughter of said James McGinn, and Joseph McGinn, or by either of them?

Fourteenth Issue. Was said James McGinn induced to sign said instrument, or to acknowledge or publish or to declare the same to be his will, or to make any dispositions of his property therein contained, by the, or any, fraud practiced upon him, the said James McGinn, or committed by said Johanna McGinn and Ellen Frances McGinn and Joseph S. McGinn, or by either of them?

Fifteenth Issue. Was the said James McGinn, at the time when the said instrument was signed by him, and by said James F. Tevlin and James F. Smith, and prior and subsequent thereto, laboring under or affected with or by any delusion or illusion as to Mary Clements, Emma Burns, P. H. McGinn, James McGinn, John McGinn or Thomas McGinn, or as to any one of them, or as to the filial affection of them, or any one of them, towards him?

Sixteenth Issue. Did said James McGinn, subsequent to the signing of said instrument by said James F. Tevlin and James F. Smith, duly make, publish and declare another instrument in writing as his last will and testament, wherein and whereby he revoked and annulled any and all former wills made, signed and executed or published by him?

Seventeenth Issue. Did said James McGinn, subsequent to the said time when said instrument was signed by him and by said James F. Tevlin and said James F. Smith, revoke the said instrument?